# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

---

ERICK OIE,                                          Civil No. 13-124 (JRT/SER)

               Plaintiff,

v.                                                  **MEMORANDUM OPINION
                                                    AND ORDER GRANTING
ALLIED WASTE SERVICES  OF NORTH                     DEFENDANT'S MOTION FOR
AMERICA LLC d/b/a Republic Services of              SUMMARY JUDGMENT**
The Twin Cities–Inver Grove Heights,

               Defendant.

---

> Anne Greenwood Brown, **SJOBERG & TEBELIUS, PA**, 2145 Woodlane Drive, Suite 101, Woodbury, MN 55125, for plaintiff.

> Susan K. Fitzke and Sarah Gorajski, **LITTLER MENDELSON, PC**, 80 South Eighth Street, Suite 1300, Minneapolis, MN  55402-2136, for defendant.

Erick Oie was employed at Allied Waste Services of North America ("AWS") between July 2003 and September 2012.  Oie developed occupational asthma while working as a diesel mechanic repairing and maintaining AWS's fleet of hauling vehicles at its Inver Grover Heights facility.  Following his diagnosis, Oie took a nine-month leave of absence from AWS, and then resigned from his position at AWS.  Oie now brings this discrimination action against AWS.  This Court dismissed Oie's negligence claim with prejudice in September 2013.  The remaining claims include disability discrimination, failure to accommodate, and retaliation under the Americans with Disabilities Act ("ADA") and the Minnesota Human Rights Act ("MHRA"), retaliation under the Minnesota Occupational Safety and Health Act ("MOSHA"), and constructive discharge.

AWS now moves for summary judgment on all remaining claims.  For the reasons set forth below, the Court concludes that Oie has not made out a prima facie case for constructive discharge, which is required for each of his remaining claims.  The Court will therefore grant Defendant's motion for summary judgment.

## BACKGROUND

AWS is a provider of solid waste collection, transfer, recycling, and disposal services.  (Decl. of Michael Fritzen ¶ 3, May 30, 2014, Docket No. 22.)  Erick Oie worked for AWS from July 2003 to September 2012.  (Am. Compl. ¶¶ 4, 24, Jan. 22, 2013, Docket No. 3.)  Oie was a diesel mechanic at the Inver Grove Heights facility repairing and maintaining AWS's fleet of hauling vehicles.  (*Id.* ¶ 6.)  On December 9, 2011, Oie notified AWS of his diagnosis of occupational asthma.  (Fritzen Decl. ¶ 42.)  Oie was advised to refrain from working near diesel fumes and took a leave of absence from AWS.  (Decl. of Kurt Devitt ¶¶ 9, 11, May 30, 2014, Docket No. 23.)  This leave of absence lasted until September 24, 2012, when Oie resigned and began work as a diesel mechanic elsewhere.  (Pl.'s Mem. in Resp. to Def.'s Mot. for Summ. J. at 17, June 19, 2014, Docket No. 27.)

Oie alleges he began complaining to his supervisors in 2004 of his difficulty breathing at work due to poor ventilation following the malfunction of a motor that operated ventilation equipment at AWS's Inver Grove Heights Facility.  (Gorajski Aff., Ex. A (Dep. of Erick Oie ("Oie Dep.")) at 101:2–103:4.)  Oie alleges that between 2006 and 2011 his symptoms grew worse and were obvious to all persons working at AWS's Inver Grove Heights facility.  Oie maintains that he continued to make complaints to

managers and supervisors throughout this period.  (Am. Compl. ¶ 9.)  Oie suffered from shortness of breath, wheezing, chest tightness, and occasional vomiting at work which had been increasing in frequency and severity before he was diagnosed on December 8, 2011, with occupational asthma.  (Aff. of Sarah J. Gorajski, Ex. B (Dep. of Joseph S. Bijwadia ("Bijwadia Dep.")) at 27:14–17, May 30, 2014, Docket No. 24.) Occupational asthma is a type of asthma that develops or worsens because of exposures at a person's occupation.  (*Id.* at 35:24–36:1.)

In November 2006, Nancy Grandt, a nurse practitioner and part of Oie's medical team, wrote a letter to AWS explaining that Oie had chronic variant asthma and that she had concerns regarding the conditions at Oie's workplace.  (Aff. of Anne Brown ("Brown Aff."), Ex. B, June 19, 2014, Docket No. 28; Oie Dep. at 66:18–67:5.)  AWS alleges that it never received this letter from Grandt.  (Supplemental Aff. of Sarah J. Gorajski., ("Supplemental Gorajski Aff."), ¶ 2, Ex. A (Def.'s Ans. to Pl.'s Interrog. No. 4 – set 3), July 2, 2014, Docket No. 32.)

Oie allegedly complained again in 2010 to his supervisors about his breathing.  (*Id.* ¶ 9.)  Oie contends that at least one of his managers, Bob Verstaete, was aware that Oie was diagnosed with a respiratory impairment – sleep apnea.  (Oie Dep. at 126:17–127:6.)  AWS maintains that during this time period they were not aware that Oie had any respiratory conditions.  (Fritzen Decl. ¶ 43.)  Oie had an annual Department of Transportation examination during which Oie represented to AWS that he had no respiratory issues.  (Oie Dep. at 91:10–21.)

At the Inver Grove Heights facility, trucks are parked in the shop, where they are worked on when motors are running or when shut down.  AWS employees are instructed to attach venting hoses to the exhaust stacks of trucks if an engine is running in the shop. (Fritzen Decl. ¶ 14.)  For newer model Mack Trucks, AWS's policy does not require venting hoses to be used when these trucks are serviced in the shop.  (*Id.*  ¶ 15.)  Oie alleges that he first made safety complaints in 2004 about the lack of ventilation when diesel trucks were running or when employees were spraying paint and that he continue to complain throughout his employment at AWS.  (Oie Dep. at 101:2–103:4.)  Oie asserts that mechanics did not attach the hoses when they were running trucks and that sometimes there were not enough hoses.  (*Id.* at 123:8–124:11.)  Oie alleges further that an electronic mechanism that would vent air to the outside was broken and Oie made a manual lever to open these vents.  (*Id.* at 73:18–24.)  AWS purchased an additional hose at some time following Oie's complaints, but there remained an issue that in a facility designed to hold five trucks, there were at most three hoses.  (*Id.* at 114:18–115:19.)  Oie further alleges that the hoses did not reach or fit the exhaust systems.  (*Id.* at 75:3–7.)

Oie alleges that he made a request to Michael Fritzen, the manager, in September 2011 that AWS fix the broken ventilation system and address his respiratory concerns. (Oie Dep. at 159–160:9.)  After this complaint, Fritzen gave Oie a mid-year review and for the first time during his employment at AWS, Oie received a "below expectation" in four of the nine categories evaluated.  (Brown Aff., Ex. D.)  Oie asserts that Fritzen did not take him seriously and told Oie to stop complaining about others' safety infractions. (Oie Dep. at 168, 245, 250.)  This allegation is reflected in the mid-year review which

states that he "need[s] to worry about his job not everyone else," and that "everyone else is. . . . doing wrong but is that over all good for the team?"   (Oie Dep. at 168:13–15, 245:1–19; Brown Aff., Ex. D.)

On October 22, 2011, Oie called the AWARE Line at AWS to report an incident when an employee became so upset he threw a heavy drilling tool when angry.  (Oie Dep. at 183:5–184:13.)  Though at the time he reported the event anonymously, Oie alleges that he told several people he reported it, including a commercial driver manager, Tom Polanski.  (*Id.* at 179:3–4.)

On November 29, 2011, Oie was told by Fritzen and General Manager James Rauschnot that he was being moved from the first to the third shift.  (Fritzen Decl. ¶ 32.) There are three shifts, and while Oie moved two degrees from first to third, management reassigned other mechanics by only one degree.  (Fritzen Decl. ¶ 28.)  Oie alleges that Rauschnot told him, "I don't blame you if you quit."  (Oie Dep. at 186:15–19.)  Fritzen explained that Oie had the least seniority and was the weakest mechanic.  (Fritzen Decl. ¶ 31.)  Oie asserts that because AWS's Inver Grove Heights location is not a union shop, seniority is not a required factor in these types of decisions.  In addition, Oie points out that the difference in seniority between Oie and the other first shift technician was negligible as they started within months of each other, Oie was a class A mechanic while the other employee was a class B mechanic, and Oie had experience as a lead technician that the other employee did not.  (Pl.'s Mem. in Resp. to Def.'s Mot. for Summ. J. at 7; Brown Aff., Ex. A; Oie Dep. at 49.)

In early December 2011, Oie filed a formal complaint with OSHA alleging safety violations related to air quality at the work site and retaliation. (Am. Compl. ¶ 16.) On December 5, 2011, Oie returned to work after being out ill and was allegedly once again told by the manager Rauschnot "I don't blame you if you quit." (Oie Dep. at 214:13–23.) On December 6, OSHA made a surprise visit and AWS was told it was based on an anonymous call. (Fritzen Decl. ¶¶ 38, 39.) Violations were found but the violations were not related to the air quality standards. (Fritzen Decl. ¶ 41.)

On December 8, 2011, Oie received his diagnose of occupational asthma. (Bijwadia Dep. 35:21–22.) On December 9, Oie informed AWS of his diagnosis, applied for FMLA benefits, and allegedly requested the repair of the ventilation in the shop. (Fritzen Decl. ¶ 42; Pl's Mem. in Resp. to Def.'s Mot. for Summ. J. at 8.) At this time Oie began his leave of absence from AWS.

AWS offered Oie the use of a respirator. (Oie Dep. at 30:18–23.) Oie's doctor concluded a respirator would be insufficient because of the severity of his symptoms and because it would be difficult and unrealistic to work underneath trucks with a mask on. (*Id.* at 30:24–32:18.) In addition, AWS offered an alternative position as a route auditor, but the job would continue to subject Oie to a risk of exposure to diesel exhaust. (*Id.* at 32:19–33:24.) Oie also discussed the possibility of another mechanic position at a recyclery with the manager Kurt Devitt, but the position was not offered to Oie because both of them agreed that the exhaust fumes associated with that position would aggravate Oie's respiratory symptoms. (*Id.* at 33:25– 34:23.)

Oie asserts that a fixed ventilation system at AWS's Inver Grove Heights location would have allowed him to return. (*Id.* at 29:7–13.) AWS counters that given the nature of AWS's business there were no open positions at the company that would avoid all exposure to diesel fumes. (Devitt Decl. ¶ 14.) Oie resigned on September 21, 2012 and began a job as a diesel mechanic with another employer where he works outdoors. (Oie Dep. at 17:3–18:19.)

## PROCEDURAL HISTORY

In December 2012, Oie commenced this action against AWS in Dakota County District Court. In January 2013, AWS properly removed the case to this Court. (Notice of Removal, Jan. 14, 2013, Docket No. 1.) In September 2013, this Court dismissed Oie's negligence claim with prejudice. (Dismissal Order, Sept. 11, 2013, Docket No. 15.) In May 2014, AWS filed this motion for summary judgment. (Def.'s Mot. for Summ. J., May 30, 2014, Docket No. 19.)

## ANALYSIS

### I.   STANDARD OF REVIEW

Summary judgment is appropriate where there are no genuine issues of material fact and the moving party can demonstrate that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A fact is material if it might affect the outcome of the case, and a dispute is genuine if the evidence is such that it could lead a reasonable jury to return a verdict for either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A court considering a motion for summary judgment must view the facts in the

- 7 -

light most favorable to the non-moving party and give that party the benefit of all reasonable inferences to be drawn from those facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## II.   AWS'S SUMMARY JUDGMENT MOTION

### A.   DISABILITY DISCRIMINATION

The ADA and the MHRA make it unlawful for an employer to discriminate against any qualified individual based on disability status.  42 U.S.C. § 12112(a); Minn. Stat. § 363A.08, subd. 2.  Oie's claims for disability discrimination under the ADA and MHRA must be analyzed under the three-step framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).  Oie must show that he "(1) is disabled within the meaning of the ADA, (2) is a qualified individual under the ADA, and (3) has suffered an adverse employment action because of [his] disability." *Hill v. Walker*, 737 F.3d 1209, 1216 (8th Cir. 2013); *Philip v. Ford Motor Co.*, 328 F.3d 1020, 1023 & n.3 (8th Cir. 2003) ("Claims arising under the MHRA are analyzed using the same standard applied to ADA claims.").  With the establishment of a prima facie case, there is a presumption of discrimination.  A defendant may rebut this by showing a legitimate non-discriminatory and non-retaliatory reason for an employment action, shifting the burden back to the employee to show that the defendant's reasons for the employment action are merely pretext for intentional discrimination. *Id*.

### 1.    Disability Discrimination under the ADA

Oie's disability discrimination claim under the ADA fails because he has not adequately shown that he suffered an adverse employment action, that is, that he was constructively discharged.

### a.    Oie's Disability While at AWS

The ADA defines a disability as "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1).  Important to the issue of disability discrimination is establishing whether and at what times Oie was disabled.  In addition, there is the factual question as to whether AWS was aware of Oie's disability prior to his disclosure in December 2011. Oie alleges that AWS received a letter from Nancy Grandt, a nurse practitioner, regarding Oie's asthma condition and the lack of ventilation, putting AWS on notice of Oie's disability in 2006.  AWS alleges that it never received this letter from Grandt.  Oie also asserts that his respiratory distress was obvious because of his outward symptoms and his continuous complaints.  (Oie Dep. at 93:3–11, 118:13–16, 125:22–126:7, 160:16–25.)  In addition AWS points out that during annual medical exams for the Department of Transportation, Oie represented that he was healthy.   Mere mention of physical symptoms to co-workers or managers is generally not enough to establish that an employer was on notice of an employee's disability. *Kobus v. Coll. of St. Scholastica, Inc.*, CIV.07-3881, 2009 WL 294370 at *8 (D. Minn. Feb. 5, 2009), *aff'd*, 608 F.3d 1034 (8th Cir. 2010).  However, because the Court must view the facts in the light most

favorable to the non-moving party, the Court will find that Oie has sufficiently shown that he was disabled based on Grandt's letter.

### b.    Oie's Qualifications as a Diesel Mechanic

To be a qualified individual, an employee must "(1) possess the requisite skill, education, experience, and training for [his] position, and (2) be able to perform the essential job functions, with or without reasonable accommodation."   *Hill*, 737 F.3d at 1216.  Oie has the necessary skills) as represented by his many years at AWS as a diesel mechanic.   AWS asserts, however, that Oie was not qualified because following his diagnosis of occupational asthma in December 2011 Oie's doctor recommended that Oie not be exposed to any diesel fumes.  (Bijwadia Dep. at 39:3–13.)   AWS explains that some level of fume exposure is a necessary part of the job.  (Devitt Decl. ¶ 14.)   Oie argues that additional ventilation would have made him qualified. (Oie Dep. at 31:7–13). Oie currently works as a diesel mechanic with another employer where he works outside rather than in a shop.  (*Id.* at 17:3–18:19.)   Oie appears to be able to perform the job with the reasonable accommodation, and the Court, construing the facts in the light most favorable to Oie, will assume for the purposes of this summary judgment motion that Oie was a qualified individual under the ADA.

### c.    Adverse Employment Action

In order to establish a prima facie case for discrimination, Oie must show that he faced an adverse employment action or that when he resigned he was constructively discharged.  Oie claims that he was subjected to several adverse employment actions:

(1) an unfavorable shift change, (2) a negative performance review, and (3) a comment by one of the managers at AWS who told Oie "I don't blame you if you quit." Oie then claims that he was constructively discharged when AWS did not modify the ventilation issues. After a comprehensive review of the record, the Court finds that Oie did not face adverse employment actions and that he was not constructively discharged.

"An adverse employment action is a tangible change in working conditions that produces a material employment disadvantage." *McCarty v. City of Eagan*, No. 12-CV-2512, 2014 WL 1672256, at *8 (D. Minn. Apr. 28, 2014) (quoting *Spears v. Mo. Dep't of Corr. & Human Resources,* 210 F.3d 850, 853 (8th Cir. 2000)). Adverse employment actions may include "termination, cuts in pay or benefits, changes that affect an employee's future career prospects. . . ." *Clegg v. Arkansas Dep't of Corr.*, 496 F.3d 922, 926 (8th Cir. 2007). A poor performance review may constitute an adverse employment action, but only where it has a tangible effect on the recipient's employment. *Jensen v. AstraZeneca LP*, No. 02-4844, 2005 WL 1432220, at *4 (D. Minn. Mar. 30, 2005) (quoting *Spears*, 210 F.3d at 853). In this case, the rating Oie received from Michael Fritzen had no impact on Oie's employment. Further, the comment "I don't blame you if you quit" is perhaps an ill-advised statement, but did not have any bearing on Oie's job responsibilities.

As to the shift change, there was no adverse employment action because the shift change did not result in any change in pay, benefits, or job responsibilities. As a result, Oie's preference for the day shift and desire to be transferred back cannot constitute an adverse employment action. *McCarty*, 2014 WL 1672256, at *8. Working a night shift

may have been unpleasant but "difficult or unpleasant working conditions" are not necessarily intolerable. *Jensen*, 2005 WL 1432220, at \*5.

Oie argues that a shift change may still constitute an adverse employment action "when the transfer results in a significant change in working conditions or a diminution in the transferred employee's title, salary, or benefits." *Fisher v. Pharmacia & Upjohn*, 225 F.3d 915, 919 (8th Cir. 2000). Oie relies heavily on *Meyers v. Nebraska Health & Human Services*, 324 F.3d 655, 660 (8th Cir. 2003), to argue that his shift change was a change in intangible benefits significant enough to preclude summary judgment. In *Meyers*, the employee was reassigned to a job with very different expectations and assignments. Those facts are distinguishable from this case, though, where Oie's work did not change except for the time of the day it was performed.

Oie asserts that the shift change made him unable to take care of the responsibilities he had at home, but whether changes are intolerable are measured on an objective standard. *Lisdahl v. Mayo Found.*, 633 F.3d 712, 718 (8th Cir. 2011). The Court cannot consider the subjective circumstances that might have led Oie to be particularly unhappy about the shift change. Although the change may have been inconvenient for Oie, the Court finds that it did not rise to the level of an adverse employment action, because there was no change in pay, benefits, or duties, and Oie's title and workload as a mechanic were unaffected. *See Summit v. S-B Power Tool, (Skil Corp.), a Div. of Emerson Elec. Co.*, 121 F.3d 416, 421 (8th Cir. 1997) (shift change not enough to constitute constructive discharge). As such, the change was minor but did not materially disadvantage Oie, and "[m]inor changes in duties or working conditions, even

unpalatable or unwelcome ones, which cause no materially significant disadvantage, do not" rise to the level of an adverse employment action.  *Clegg*, 496 F.3d at 926 (citation omitted); *see Spears*, 210 F.3d at 853.

Even if the shift change were an adverse employment action, Oie offers no evidence that AWS changed his shift with the intent of forcing him to quit.  The shift change and negative performance review by Fritzen occurred before Oie told AWS about his occupational asthma.  Although Oie alleges that Grandt sent AWS a letter several years before the change, putting AWS on notice of Oie's condition, there is no evidence establishing a connection between the review, the shift change, and the letter.

### d.    Constructive Discharge

In addition to the claim that these circumstances constituted adverse employment actions, Oie alleges that he was constructively discharged, which satisfies the third step of the prima facie case.  "To prove a constructive discharge, an employee must show that the employer deliberately created intolerable working conditions with the intention of forcing [him] to quit." *Alvarez v. Des Moines Bolt Supply, Inc.*, 626 F.3d 410, 418 (8th Cir. 2010).  Oie must show that a reasonable person would find the working conditions intolerable. *Phillips v. Taco Bell Corp.*, 156 F.3d 884, 890 (8th Cir. 1998).  To prove the employer's intent, Oie may use direct evidence or show that AWS could have reasonably foreseen that Oie would quit as a result of their actions. *Fercello v. Cnty. of Ramsey*, 612 F.3d 1069, 1083 (8th Cir. 2010).

 Oie argues that the buildup of fumes created intolerable working conditions and that AWS should have reasonably foreseen that failing to repair the ventilation would

cause Oie to quit.  Oie claims that the shop was not properly ventilated and blames the broken ventilation machine, which malfunctioned, according to Oie, in 2004.  Oie's evidence is not sufficient to overcome summary judgment, however.  Although the ventilation machine allegedly broke in 2004, Oie did not resign until 2011.  He has offered no evidence that AWS deliberately failed to repair the ventilation throughout Oie's employment or that AWS should have reasonably foreseen that the failure to fix the ventilation system would cause Oie to quit, particularly when he had continued his employment for the previous seven years after the system allegedly malfunction.  The facility was found not to be in violation of OSHA air quality standards, and AWS provided additional hoses to be used in the shop.  Oie claims that he was the only one getting sick from the fumes and therefore the failure to fix the ventilation was directed at him and discriminatory.  This argument lacks support, though, as AWS kept Oie employed throughout his medical leave.

Oie also contends that AWS should have reasonably foreseen that failing to repair the vent would cause Oie to quit his job, but the alleged complaints about the broken ventilation began years before Oie disclosed his occupational asthma.  It would require too great a leap to find that the continued failure to fix this mechanized ventilation system was either directed at Oie intentionally, or that it was reasonably foreseeable that Oie would resign because of it when he had not done so over a seven year period of time. Oie is unable to connect this prolonged failure to fix a ventilation system to any alleged discrimination directed at him.

Oie contends that the close proximity of some of the employment-related actions and his resignation makes a stronger claim for constructive discharge. Something more than temporal connection is needed, however. The burden on the plaintiff in a constructive discharge claim is "substantial." *O'Brien v. Dep't of Agric.*, 532 F.3d 805, 810–11 (8th Cir. 2008) (citing *Fischer v. Forestwood Co.*, 525 F.3d 972, 980 (10th Cir. 2008) and *Garrett v. Hewlett–Packard Co.*, 305 F.3d 1210, 1221 (10th Cir. 2002)).

Several Eighth Circuit cases establish that evaluations and shift changes do not amount to constructive discharge without further evidence establishing that conditions rise to the level of being so egregious that they are intolerable. In *Allen v. Bridgestone/Firestone, Inc.*, no constructive discharge was found even where the plaintiff's hours and income were reduced, the plaintiff faced suspension without pay for three days based on a customer complaint, his hours were changed without sufficient notice, request for transfer was denied, and he was told that if he was not pleased with the transfer to the night shift he could quit. 81 F.3d 793, 796 (8th Cir. 1996). The court found no constructive discharge in part because the work schedules of other employees were also changed and other employees had to work night shifts as well. *Id.* at 797. In *Spears*, the court held that a performance evaluation and transfer did not render working conditions intolerable, even if viewed together and even if the working environment was not ideal because a reasonable person would not have deemed resignation the only plausible alternative. 210 F.3d at 855.

### e.      Non-Discriminatory Reasons and Pretext

If Oie had established a prima facie case, a presumption of discrimination would arise, which AWS could rebut by showing a legitimate non-discriminatory and non-retaliatory reason for their employment actions.  If AWS could show a legitimate reason for their employment action, Oie could then prove discrimination by showing that AWS's reasons were merely pretext for intentional discrimination.  *Hill*, 737 F.3d at 1216.

AWS asserts that they changed Oie's shift for business reasons, that Oie had the least seniority, and that five of eleven other mechanics also faced shift changes.  Oie asserts that these reasons are mere pretext for discrimination because the difference in seniority between Oie and the next mechanic was just a matter of months.  Timing is again an issue for Oie's assertion that AWS's actions were mere pretext, however, because the shift change occurred before Oie's diagnosis in December 2011, a number of years had passed since the letter from Grandt was allegedly sent, and the failure to fix the ventilation allegedly began years before AWS was told of Oie's occupational asthma. Oie has offered no evidence linking any alleged continued failure to fix the ventilation and AWS's knowledge of Oie's disability or complaints.

### 2.      Disability Discrimination under the MHRA

In addition to his ADA discrimination claim, Oie brings a claim for disability discrimination under the Minnesota Human Rights Act ("MHRA"). An employer has violated the MHRA if they discriminate against an employee based on the employee's disability.  Minn. Stat. § 363A.08, subd. 2.  To present a prima facie case of disability discrimination under the MHRA, Oie must establish the same elements as a disability

discrimination claim under the ADA.  *Philip v. Ford Motor Co.*, 328 F.3d 1020, 1023 & n.3 (8th Cir. 2003) ("Claims arising under the MHRA are analyzed using the same standard applied to ADA claims."). He must show that (1) he has a disability within the meaning of the MHRA, (2) he is qualified to perform the essential functions of his job, with or without reasonable accommodation, and (3) he suffered an adverse employment action because of his disability.  *Liljedahl v. Ryder Student Transp. Servs., Inc.*, 341 F.3d 836, 841 (8th Cir. 2003).

Oie is unable to establish a prima facie case under the MHRA because Oie did not suffer an adverse employment action.  The shift change was too minor to cause constructive discharge, and the negative performance review did not result in any changes to Oie's employment. The failure to fix the ventilation system does not constitute constructive discharge because the alleged failure to fix the ventilation equipment and Oie's resignation are far from contemporaneous.  Therefore, the Court will grant summary judgment to AWS on Oie's MHRA claim.

### B.      FAILURE TO ACCOMMODATE

Next, Oie seeks relief on the basis of a failure to accommodate under both the ADA and the MHRA.  Oie asserts that AWS knew of his occupational asthma and that they failed to make a reasonable accommodation that would enable him to perform his job as a mechanic.

### 1.     Failure to Accommodate under the ADA

A failure to accommodate claim must satisfy a "modified burden-shifting analysis." *Fenney v. Dakota, Minn. & E. R.R. Co.*, 327 F.3d 707, 712 (8th Cir. 2003). A plaintiff claiming that an employer failed to make a reasonable accommodation "must first make a facial showing that he has an ADA disability and that he has suffered an adverse employment action. Then he must make a facial showing that he is a 'qualified individual.'" *Id.*; *Leneau v. DCI Plasma Ctr. of Duluth, LLC*, Civ. 11-404, 2012 WL 4090177, at *4 (D. Minn. Sept. 17, 2012). In a reasonable accommodation case, the "discrimination" is the failure to reasonably accommodate the limitations of the disabled person. *Peebles v. Potter*, 354 F.3d 761, 767 (8th Cir. 2004).

An interactive process, or discussion, between employer and employee is required to determine what kind of accommodation is necessary to afford reasonable accommodation. "This process should identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations." 29 C.F.R. § 1630.2 To show that AWS failed to participate in the interactive process, Oie must establish that  1) AWS knew about Oie's disability,  2) Oie requested accommodations or assistance for his disability, 3) AWS did not make a good faith effort to assist Oie in seeking accommodations, and 4) Oie could have been reasonably accommodated but for the employer's lack of good faith. *Peyton v. Fred's Stores of Ark., Inc.,* 561 F.3d 900, 902 (8th Cir. 2009) (quoting *Fjellestad v. Pizza Hut of America, Inc.*, 188 F.3d 944, 952 (8th Cir. 1999)). An employee is not required to use any special words to make a request for accommodation, *Fjellestad*, 188 F.3d at 952 n.5, but

he or she must show that an accommodation was requested in some way and that it was denied.

Although "the absence of an express and unequivocal request is not necessarily fatal to a failure-to-accommodate claim," the employee's request "nonetheless must make clear that the employee wants assistance for his or her disability. In other words, the employer must know of both the disability and the employee's desire for accommodations for that disability." *Evanson v. Safe Haven Shelter*, Civ. 12-1195, 2014 WL 1303686, at *9 (D. Minn. Mar. 31, 2014) (quoting *Ballard v. Rubin*, 284 F.3d 957, 961–62 (8th Cir. 2002)).   In this case, because Oie sought a fix to AWS's ventilation, he must show that his requests amounted to a request for accommodation and that AWS knew of the request but failed to make a good faith effort to assist him.   *EEOC v. Prod. Fabricators, Inc.*, 763 F.3d 963, 971 (8th Cir. 2014).

As with Oie's disability discrimination claims under the ADA and MHRA, Oie's failure to accommodate claim fails because Oie has not demonstrated that he was subjected to an adverse employment action.   Even if Oie had established a prima facie case for failure to accommodate, however, AWS clearly made an effort to accommodate his disability before Oie resigned.

AWS offered a respirator and an alternative job to Oie.   Although it is not clear whether any accommodation would have allowed Oie to work around diesel fumes, the Court does not have to reach that issue, because Oie has not shown that he suffered an adverse employment action, and AWS offered accommodations.   Thus, the Court will grant summary judgment for AWS on Oie's failure to accommodate claim.

### 2.   Failure to Accommodate under the MHRA

An employer violates the MHRA by failing "to make reasonable accommodation to the known disability of a qualified disabled person." Minn. Stat. § 363A.08, subd. 6. Reasonable accommodation "means steps which must be taken to accommodate the known physical or mental limitations of a qualified disabled person." *Id.* A prima facie case for failure to accommodate under the MHRA requires showing (1) Oie is disabled within the meaning of the MHRA, (2) Oie is qualified to perform the essential functions of his job with or without reasonable accommodation, and (3) Oie suffered an adverse employment action because of his disability. *McCain v. Andersen Corp.,* 567 F.3d 956, 967 (8th Cir. 2009). Oie has not established that there was a constructive discharge or any adverse employment actions. Therefore, he cannot recover under the MHRA for failure to accommodate.

### C.   RETALIATION

Oie claims retaliation under the ADA, MOSHA, and MHRA. The ADA prohibits employers from discriminating against an individual because they "opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(A). MOSHA prohibits discrimination against employees who exercise any right authorized under the law. Minn. Stat. Ann. § 182.669. Similarly, the MHRA prohibits reprisal against any person because that person opposed a practice prohibited by the MHRA. Minn. Stat. § 363A.15.

### 1.      Retaliation under the ADA

A successful retaliation claim must show either direct evidence of retaliatory discrimination or establish an inference of discrimination under the *McDonnell Douglas* framework. *Prod. Fabricators, Inc.*, 763 F.3d at 971.  Oie must show:  (1) he engaged in a statutorily protected activity, (2) the employer took an adverse action against him, and (3) there was a causal connection between the adverse action and the protected activity. *Id.*   When these are established, the claim proceeds under the *McDonnell Douglas* framework.  *Id.*   As Oie cannot establish an adverse employment action or constructive discharge, his claim for retaliation under the ADA fails.

Oie claims retaliation regarding three instances: (1) that AWS retaliated against Oie for requesting a reasonable accommodation, (2) that AWS retaliated against Oie for his complaint on the AWARE line, and (3) that AWS retaliated against Oie for his OSHA complaints.

As to the reasonable accommodation request, Oie alleges that he made complaints to the manager Michael Fritzen and that their discussion regarding Oie's concerns about ventilation amounted to a request.  Following this meeting, Oie received a performance review and his first below-average rating.  AWS asserts that they had no reason to believe this was a complaint of disability discrimination or a request for accommodation as this was before the diagnosis and disclosure in December 2011.  A negative performance review is not on its own enough to constitute an adverse employment action when there is no tangible effect on the recipient's employment.  *Jensen*, 2005 WL 1432220, at *4

(quoting Spears, *210* F.3d at 854).  Because there is no adverse employment action, the reasonable accommodation claim does not amount to retaliation.

As to the AWARE Line call, Oie explains that he made complaints to AWS's AWARE Line and, not long after, was given his shift change.  Oie's claim with respect to the AWARE Line call fails all three steps of the analysis for retaliation claims laid out in the *Prod. Fabricators* case.  First, the call was not a statutorily protected activity.  The records of Oie's complaints concern only an angry outburst by an AWS employee about where tools should be kept.  This complaint about another employee's activity did not concern Oie's disability and is not a protected activity under the ADA.  *See* 42 U.S.C. § 12203(a) (providing the standard for retaliation); *Barnes v. Benham Grp., Inc.*, 22 F. Supp. 2d 1013, 1024 (D. Minn. 1998) ("[P]laintiff must show that when the interference, coercion, or intimidation took place they were exercising or enjoying a right protected by the ADA.").  Therefore, this claim for retaliation fails the first required element for claims of retaliation.  Second, as explained above, the shift change and negative performance review do not amount to adverse employment actions as they are not a material change in circumstances, benefits, title, or pay, and would not have dissuaded a reasonable employee from making charges of discrimination.  Third, Oie has not shown a causal connection between the AWARE Line call and any employment actions, because the call was anonymous and there is no indication that AWS knew Oie had made the call.  As such, Oie's claim as to the AWARE Line call does not satisfy the retaliation test.

Finally, Oie also called OSHA to make complaints about air quality issues.  Once again, however, Oie has failed to show that AWS took any adverse employment action against him, or that they took any action at all that was causally linked to his call to OSHA.  The negative review and shift change occurred before the OSHA complaint and before Oie came to AWS with his diagnosis of occupational asthma.  Thus, all three of Oie's grounds for retaliatory discrimination fail.

Oie alleges that the temporal proximity between the above described events: the ventilation complaints, the AWARE Line call, and the OSHA complaint, should preclude summary judgment.  Generally in the Eighth Circuit more than a temporal connection is needed to establish a genuine issue of material fact.  *See Nelson v. J.C. Penney Co.*, 75 F.3d 343, 346 (8th Cir. 1996).  A "very close" proximity is required when timing is the only causal connection.  *Smith v. Allen Health Sys., Inc.*, 302 F.3d 827, 832 (8th Cir. 2002) (citation omitted) (explaining that two weeks was barely sufficient). A pattern of adverse actions occurring just after protected activities can supply additional evidence to satisfy the causation requirement.  *Id.*  In this case, there is little evidence supporting a causal connection.  The complaint to Fritzen was within the same month as the performance review, but as explained a review without consequences is not an adverse employment action.  The alleged complaint to Fritzen was over two months before the shift change.  The review and shift change took place before the complaint to OSHA, and therefore not causally related.  Oie resigned ten months later.  The shift change was over a month after the AWARE line call and Oie resigned a year after that call. These temporal connections are too weak to establish on their own a causal connection.  The

AWARE Line call was anonymous and did not concern protected activities. Oie gives no evidence that AWS knew the OSHA complaint was from Oie or took action against Oie because of it, given that he made the OSHA call after the allegedly-adverse actions had already been taken.

The final claim – that the alleged failure to fix the ventilation system was an adverse employment action – also fails the causation requirement. Oie points to temporal connections here as well to support his claims of retaliation. This claim is weak as the alleged failure to fix the ventilation began approximately six years before Oie disclosed his diagnosis of occupational asthma. Because none of Oie's claims meet the three prongs of the retaliation test under the ADA, the Court will grant summary judgment for AWS on Oie's ADA retaliation claims.

### 2.    Retaliation under MOSHA

Retaliation claims under MOSHA are analyzed under the *McDonnell Douglas* three-part burden shifting test described in section II.A. *See Carlson v. Arrowhead Concrete Works, Inc.*, 375 F. Supp. 2d 835, 841 (D. Minn. 2005); *Hubbard v. United Press Int'l, Inc.*, 330 N.W.2d 428, 444 (Minn. 1983) (applying *McDonnell Douglas* to retaliation claims).

As under the ADA, to recover for retaliation under MOSHA, Oie must establish (1) he engaged in a statutorily protected activity, (2) the employer took an adverse action against him, and (3) there was a causal connection between the adverse action and the protected activity. *Prod. Fabricators, Inc.*, 763 F.3d at 971. When these are established, the claim proceeds under the *McDonnell Douglas* framework.

Oie makes the same retaliation allegations under MOSHA that he made under the ADA: the AWARE Line call, the OSHA call, and ventilation accommodation request. As with the ADA claims, the AWARE Line call does not constitute a protected activity. In regards to both the AWARE line call and the OSHA complaint, as there was no constructive discharge, the second element is not met on either instance.  In addition, the third element is not met because AWS claims they were not aware Oie made the call to OSHA or the AWARE Line, and Oie has offered no evidence to create a causal connection between any of his actions and the allegedly-corresponding employment actions by AWS.  Therefore, recovery is precluded under MOSHA as well.

### 3.       Retaliation under the MHRA

Engaging in reprisal against any person for opposing a practice prohibited by the MHRA constitutes a discriminatory practice.  Minn. Stat. § 363A.15.  The MHRA defines reprisal as "any form of intimidation, retaliation, or harassment."  *Id.*  Under the statute, an employer engages in reprisal when it does the following in response to an employee engaging in protected activity: refuse to hire the individual; depart from any customary employment practice; transfer or assign the individual to a lesser position in terms of wages, hours, job classification, job security, or other employment status; or inform another employer that the individual has engaged in [protected] activities.  *Id.*; *Ewald v. Royal Norwegian Embassy*, 902 F. Supp. 2d 1208, 1217 (D. Minn. 2012).

As with ADA and MOSHA retaliation claims, retaliation claims under the MHRA are analyzed under the *McDonnell Douglas* burden-shifting test.  *Ewald*, 902 F. Supp. 2d at 1217.   To establish the adverse employment action element for an MHRA claim, the

employee must show that the employer's conduct was so egregious that it would have "dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* (quoting *Burlington N. & Santa Fe Ry. Co. v. White,* 548 U.S. 53, 68 (2006)).

As explained above, Oie has not met the *McDonnell Douglas* burden.  The AWARE Line call does not satisfy any of the three *McDonnell Douglas* elements.  The OSHA call satisfies the first but not the second or third elements, and the ventilation accommodation request – even if broadly construed as a protected activity – does not satisfy elements two or three.  Accordingly, the Court will grant summary judgment with respect to Oie's MHRA retaliation claim.

### D.    CONSTRUCTIVE DISCHARGE

Finally, Oie claims constructive discharge as a stand-alone claim.  (Am. Compl. ¶ 94.)  Constructive discharge involves an employer deliberately rendering working conditions intolerable, thereby forcing an employee to quit.  *Baker v. John Morrell & Co.*, 382 F.3d 816, 829 (8th Cir. 2004).  To demonstrate a case of constructive discharge requires (1) that a reasonable person would find the working conditions intolerable, and (2) that the employer intended to force the employee to quit.  *Wright v. Rolette Cnty.*, 417 F.3d 879, 886 (8th Cir. 2005).   If Oie cannot show that AWS deliberately created these conditions to force him to quit, he may still prevail if AWS could have reasonably foreseen that Oie would quit as a result of AWS's actions.  *Id.; Fenney*, 327 F.3d at 717.

Although Oie claims constructive discharge as a stand-alone claim, under Minnesota law, a constructive discharge claim cannot proceed without an ADA, MOSHA or MHRA claim.  *Kobus*, 2009 WL 294370, at *8 (holding that constructive discharge is

a "companion tort" that "may only be maintained where a plaintiff can establish some separate underlying illegality") (internal quotation marks omitted); *Coursolle v. EMC Ins. Grp., Inc.*, 794 N.W.2d 652, 660 (Minn. Ct. App. 2011).  Even if constructive discharge were able to be a stand-alone claim, it would fail under the facts alleged by Oie.  As explained in this Order, the negative performance review and shift change are not enough to amount to adverse employment actions.  In addition, the alleged failure to fix the ventilation system does not meet the *McDonnell Douglas* test, nor would it satisfy *Wright* in a pure constructive discharge analysis.

Taking the evidence in the light most favorable to Oie, the Court finds Oie a *prima facie* case has not been made on any of the claims.  The Court will therefore grant summary judgment.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment [Docket No. 19] is **GRANTED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED:  February 11, 2015
at Minneapolis, Minnesota.

s/ John R. Tunheim
JOHN R. TUNHEIM
United States District Judge